# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **ELAHE KHIAL,** | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| v. | Case No. 2:12cv167 |
| **PROGRESSIVE INSURANCE COMPANY,** | |
| Defendant. | **Magistrate Judge Paul M. Warner** |

All parties in this case have consented to having United States Magistrate Judge Paul M. Warner conduct all proceedings in this matter, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court are Progressive Insurance Company's ("Defendant") three motions for partial summary judgment regarding (1) punitive damages,[2] (2) breach of contract,[3] and (3) bad faith.[4]

---

[1] *See* docket no. 9.

[2] *See* docket no. 22.

[3] *See* docket no. 24.

[4] *See* docket no. 23.

On April 30, 2014, the court held a hearing on the motions. At the hearing, Elahe Khial ("Plaintiff") was represented by Bradley Booke, who appeared by telephone, and Defendant was represented by Joseph Joyce. Before the hearing, the court carefully considered the motions, memoranda, and other materials submitted by the parties. After considering the arguments of counsel, taking the motions under advisement, the court renders the following memorandum decision and order.

At the hearing, counsel for Plaintiff indicated that he was conceding the punitive damages motion. As such, Defendant's motion for partial summary judgment regarding punitive damages is hereby **GRANTED**.

## I. BACKGROUND

This case arises out of automobile accident that occurred on October 24, 2008. Plaintiff's vehicle was rear ended by another vehicle driving approximately 35 miles per hour. The force of the impact threw Plaintiff into the steering wheel and windshield, and it broke the windshield even though her airbags had deployed. Plaintiff alleges various head, neck, and back injuries arising out of that accident. Plaintiff settled with the at-fault driver for her automobile insurance ("State Farm") policy limits of $50,000.

Plaintiff alleges that she underwent approximately eighteen months of physical therapy for her injuries but that her symptoms did not improve. In fact, Plaintiff contends that her cervical injuries have worsened since that time and continue to cause moderate to severe pain on a daily basis. In April and May 2010, she had an MRI and was diagnosed by an orthopedic surgeon with "advanced cervical spondylosisis at C5-6 with left-sided foraminal stenosis and

chronic C6 radicular symptoms."[5]  Plaintiff's physicians have indicated that she will require surgery to her cervical spine to address these injuries.

On June 2, 2011, Plaintiff made a claim for underinsured motorist ("UIM") benefits pursuant to her insurance policy with Defendant.  Plaintiff had paid premiums to Defendant for $100,000 in UIM coverage, as well as for other coverage, for the period from July 29, 2008, to January 29, 2009.  She requested the policy limit of $100,000.

On June 3, 2011, Terry Dennison ("Ms. Dennison"), the claims representative Defendant assigned to evaluate Plaintiff's claim, called Plaintiff's counsel to advise him of the documents she needed for Defendant's file, such as the proof of tender letter by the tortfeasor's carrier, State Farm.  Also on June 3, Ms. Dennison sent a letter to Plaintiff's counsel seeking a medical authorization form and amount of insurance.  On June 15, 2011, Ms. Dennison called Plaintiff's counsel seeking an update and inquired about obtaining the medical authorization.

On or about September 26, 2011, Defendant received a UIM demand letter from Plaintiff's counsel demanding the UIM policy limits of $100,000.  On September 26, 2011, Ms. Dennison called Plaintiff's counsel and left a message.  She also sent a letter stating that there were no medical bills attached to the demand and that Defendant still did not have the letter from State Farm that it had tendered policy limits.  On October 10, 2011, Ms. Dennison left a message for Plaintiff's counsel that she still had not received all the records and bills.  On October 31, 2011, after receiving no further documentation or a signed medical authorization form, Ms. Dennison completed her review and evaluation of Plaintiff's demand based on the medical

---

[5] Docket no. 27 at 5.

records and bills that she did receive. Based on the injuries claimed, medical expenses of $10,908.67, Ms. Dennison determined that the total value of Plaintiff's claim was between $35,000 and $48,000. On October 31, 2011, Defendant offered Plaintiff $1,000 to settle the claim.

## II. STANDARD OF REVIEW

A motion for summary judgment under rule 56 of the Federal Rules of Civil Procedure is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt." *Alta Health Strategies, Inc. v. Kennedy*, 790 F. Supp. 1085, 1089 (D. Utah 1992) (quotations and citations omitted). Once the movant demonstrates an absence of a genuine issue of material fact, the nonmovant cannot simply rest upon his or her pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1062 (10th Cir. 2002) (quotations and citation omitted).

## III. DISCUSSION

Defendant requests that the court dismiss Plaintiff's complaint for breach of contract because Plaintiff has failed to disclose any experts to testify as to the causation of her injuries from the subject accident as required by Utah law. Defendant further requests that the court dismiss Plaintiff's complaint for breach of the covenant of good faith and fair dealing because

Plaintiff's claim is fairly debatable as a matter of law. The court will address the motions in turn.

### A. Breach of Contract

Defendant asserts that because Plaintiff has failed to disclose any experts to testify as to the causation of her injuries from the accident, her breach of contract claim must fail. Specifically, Defendant notes that the deadline for Plaintiff to disclose her rule 26(a)(2) experts was on July 15, 2013, and she failed to do so. Defendant argues that Plaintiff cannot prove the causation of her injuries without expert testimony and that if Plaintiff is allowed to have an expert testify, it would be prejudiced because it has been precluded from conducting discovery concerning any expert witness.

In response, Plaintiff argues that expert testimony is not necessary to establish a causal link between the motor vehicle accident and her injuries. Specifically, Plaintiff maintains that a jury can determine that her injuries are from the accident through other evidence. For instance, Plaintiff asserts that her medical records contain many references about the accident and her injuries. Plaintiff argues that her treating physicians may testify as fact witnesses to explain her medical records. Plaintiff further contends that Defendant's own witnesses help to establish a causal connection between the accident and her injuries. First, Ms. Dennison included $10,908.67 in medical special damages in her evaluation, which, Plaintiff concludes, implies that these damages are related to the collision. Second, Defendant's retained medical witness, Dr. Lyle Mason, opined that Plaintiff had suffered a "mild cervical strain in the accident" that "would have resolved within 6 weeks" and that "passive, symptomatic treatment such as PT or

5

chiropractic treatment for up to 6 weeks following the accident would be reasonable treatment for that injury."[6] And, finally, Plaintiff asserts that State Farm paid its insurance policy limit to settle Plaintiff's claims against the at-fault driver, which gives rise to the strong inference that it had no causation defense.

There is no question that Plaintiff failed to identify any expert witnesses in this matter. Under rule 26 of the Federal Rules of Civil Procedure, a party must disclose any individual who plans to provide expert testimony, regardless of whether the individual is retained or specially employed. *See* Fed. R. Civ. P. 26(a)(2)(A). "[T]reating physicians not disclosed as experts are limited to testimony based on personal knowledge and may not testify beyond their treatment of a patient." *Blodgett v. United States*, No. 2:06-CV-00565DAK, 2008 WL 1944011, *5 (D. Utah May 1, 2008) (quotations and citation omitted). "[A] lay witness may testify only as to opinions '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding . . . of a fact in issue.'" *Id.* (quoting Fed. R. Evid. 701). But "a lay witness may not proffer opinion testimony 'based on scientific, technical, or other specialized knowledge.'" *Id.*

Plaintiff must prove the subject automobile accident was the "proximate and actual causation of the injury." *Clark v. Farmers Ins. Exch.*, 893 P.2d 598, 601 (Utah Ct. App. 1995). "[T]he causal connection between the alleged negligent act and the injury is never presumed and . . . this is a matter the plaintiff is always required to prove affirmatively." *Fox v. Brigham Young Univ.*, 176 P.3d 446, 451 (Utah Ct. App. 2007) (quotations and citation omitted). "Although 'the question of proximate causation is generally reserved for the jury, . . . the trial

---

[6] Docket no. 29 at 8.

court may rule as a matter of law on this issue . . . if . . . there is no evidence to establish a causal connection, thus leaving causation to jury speculation.'" *Fox*, 176 P.3d at 451 (quoting *Clark*, 893 P.3d at 601) (other quotations omitted)).

Utah courts generally require expert medical testimony to prove causation in all "but the most obvious cases." *Lundgren v. Matrixx Initiatives, Inc.*, No. 1:10-cv-128, 2013 WL 3087726, *1 (D. Utah June 18, 2013) (quoting *Ladd v. Bowers Trucking, Inc.*, 264 P.3d 752, 756 (Utah Ct. App. 2011)). Whether expert testimony is needed to establish a causal connection between a tortfeasor's actions and a plaintiff's injury, "depends on the nature of the injury." *Beard v. K-Mart Corp.*, 12 P.3d 1015, 1019 (Utah Ct. App. 2000) (quotations and citation omitted). Where a plaintiff's injury "involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding, there must be expert testimony that the negligent act probably caused the injury." *Id.* (quotations and citation omitted). "When the proximate cause of an injury is left to speculation, the claim fails as a matter of law." *Clark*, 893 P.2d at 601 (quotations and citation omitted).

In the instant matter, Plaintiff has a history of chiropractic care for chronic neck and back pain. Specifically, Plaintiff sought treatment from a chiropractor beginning in April 2006 through April 2008 for complaints of neck pain, upper back pain, and low back pain. While Plaintiff asserts that she was not treated for the symptoms or conditions that emerged as a result of the automobile accident, without expert testimony concerning Plaintiff's injuries and their cause, Plaintiff can only show "a chronological relationship between the accident and her symptoms." *Beard*, 12 P.3d at 1021. Given the history of Plaintiff's neck and back pain, it is

7

beyond the ordinary knowledge and common experience of a layperson to determine the cause of Plaintiff's current injuries. The type of injuries Plaintiff alleges (including, but not limited to, "advanced cervical spondylosisis at C5-6 with left-sided foraminal stenosis and chronic C6 radicular symptoms"[7]) require "scientific, technical, or other specialized knowledge" about which a lay witness may not opine. *Blodgett*, 2008 WL 1944011, at *5. A jury would be forced to speculate as to whether Plaintiff's neck and back pain was caused by the motor vehicle accident or by her previous injury, or if the motor vehicle accident exacerbated a pre-existing condition. As such, Defendant's motion for partial summary judgment as to breach of contract is **GRANTED**.

### B. Bad Faith

Defendant argues that Plaintiff cannot demonstrate that it handled her claim in bad faith because (1) it diligently investigated the facts of Plaintiff's claim, (2) it fairly evaluated her claim, (3) it acted promptly and reasonably in rejecting her claim, and (4) Plaintiff's claim is fairly debatable. In response, Plaintiff asserts that there is ample evidence demonstrating that Defendant did not diligently investigate or fairly evaluate Plaintiff's claim. Plaintiff also argues that reasonable minds can differ as to whether or not Defendant met the required standard of care, and, as such, summary judgement is inappropriate.

The implied obligation of good faith performance requires an insurer to (1) "diligently investigate the facts to enable it to determine whether a claim is valid," (2) "fairly evaluate the claim," and (3) "act promptly and reasonably in rejecting or settling the claim." *Beck v. Farmers*

---

[7] Docket no. 27 at 5.

*Ins. Exchange*, 701 P.2d 795, 798 (Utah 1985). Denying a claim is "reasonable if the insured's claim is fairly debatable. Under Utah law, if an insurer denies an insured's claim [that] is fairly debatable, [then] the insurer is entitled to debate it and cannot beheld to have breached the implied covenant if it chooses to do so." *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 533-34 (Utah 2002) (quotations and citation omitted). If reasonable minds can differ as to whether the Defendant diligently investigated or reasonably evaluated Plaintiff's UIM claim, summary judgment on her bad faith cause of action is improper. *See Jones v. Farmers Ins. Exch.*, 286 P.3d 301, 305 (Utah 2012).

The court concludes that the validity of Plaintiff's claim is fairly debatable. The day after Plaintiff filed her claim for UIM benefits, Ms. Dennison called Plaintiff's counsel to begin gathering preliminary information on Plaintiff's claim and injuries. Ms. Dennison continually followed up with Plaintiff's counsel to obtain medical authorizations, records, and bills. After receiving no communication, no further documentation, and no medical authorization form from Plaintiff's counsel, Ms. Dennison completed her review and evaluation of Plaintiff's demand based on the limited medical records and bills she had received. While Plaintiff complains that Ms. Dennison ignored the medical opinion of Plaintiff's physician that Plaintiff was a candidate for future surgery, Ms. Dennison stated that she reviewed and considered that opinion. Because Plaintiff indicated that she did not want surgery, Ms. Dennison did not include future surgery in the value. Plaintiff now contends that the surgery is inevitable; however, over five years have passed since the accident, and Plaintiff still has not had surgery.

Furthermore, after physically examining and reviewing Plaintiff's medical records, Dr. Mason opined that Plaintiff had not suffered a permanent injury in the accident and that she did not require surgery. As noted above, Dr. Mason reported that Plaintiff suffered a "mild cervical strain in the accident" that "would have resolved within 6 weeks" and that "passive, symptomatic treatment such as PT or chiropractic treatment for up to 6 weeks following the accident would be reasonable treatment for that injury."[8] "Denying benefits under an insurance policy in reliance on an expert's report, such as a doctor's report, . . . is not a bad faith denial because the expert's report creates a legitimate factual question regarding the validity of an insured's claim for benefits, making the insured's claim at least fairly debatable." *Prince*, 56 P.3d at 535.

The court concludes that Defendant fulfilled its obligation to diligently investigate the facts to determine whether Plaintiff's claim was valid. Defendant fairly evaluated the claim, and acted promptly and reasonably in making a settlement offer based on the facts before Ms. Dennison. Plaintiff's claim for UIM benefits is fairly debatable as Dr. Mason opined that Plaintiff did not require surgery or future medical treatment for injuries related to the accident.

Because the validity of Plaintiff's UIM claim is fairly debatable, Defendant's denial of benefits did not breach the covenant of good faith and fair dealing as a matter of law. Accordingly, Defendant's motion for partial summary judgment as to bad faith is **GRANTED**.

---

[8] Docket no. 29 at 16.

## VI. CONCLUSION

Based on the foregoing, Defendant's motions for partial summary judgment as to breach of contract[9] and bad faith[10] are **GRANTED**. Because Plaintiff conceded Defendant's motion for partial summary judgment regarding punitive damages[11] at the hearing, that motion is likewise **GRANTED**. The Clerk of Court is directed to close the case, with each party to bear her and its own fees and costs.

**IT IS SO ORDERED.**

DATED this 30th day of September, 2014.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[9] *See* docket no. 24.

[10] *See* docket no. 23.

[11] *See* docket no. 22.